**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| IN RE: MI WINDOWS AND DOORS, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 2333<br>Civ. No. 2:12-mn-00001 |
| JOSEPH DEBLAKER, JERRY C. THORNE, and KRISTI E. THORNE, *individually and on behalf of all others similarly situated*, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 2:12-cv-01258-DCN |
| vs. | ) ) | |
| MI WINDOWS AND DOORS, INC., | ) ) | **ORDER** |
| Defendant. | ) ) | |

This matter is before the court on a motion to dismiss and for reconsideration brought by defendant MI Windows and Doors, Inc. (MIWD). The court denies the motion.

## I. BACKGROUND

On July 23, 2010, plaintiff Joseph DeBlaker filed a class action complaint against MIWD in North Carolina state court. MIWD removed the case to the United States District Court for the Western District of North Carolina on September 2, 2010. On September 14, 2010, DeBlaker amended his complaint, adding Jerry C. Thorne and Kristi E. Thorne (the Thornes) as named plaintiffs. In the amended complaint, DeBlaker brought claims for negligence and unfair trade practices, the Thornes brought a claim for breach of express warranty, and all plaintiffs moved for declaratory relief.

1

On October 12, 2010, MIWD filed a motion to dismiss or, in the alternative, for judgment on the pleadings. The Honorable Graham C. Mullen denied the motion. Specifically, Judge Mullen allowed DeBlaker's claims for negligence and unfair trade practices to go forward and for the Thornes to amend their breach of express warranty claim.

Plaintiffs filed a second amended complaint on April 14, 2011. On May 23, 2011, MIWD filed a motion to dismiss or, in the alternative, for reconsideration of Judge Mullen's denial of the previous motion to dismiss. On April 23, 2012, this and other cases were transferred to this court by the Judicial Panel on Multidistrict Litigation for coordinated or consolidated pretrial proceedings. This court assumed jurisdiction over the motion to dismiss and for reconsideration.

In their second amended complaint, plaintiffs allege that they own homes containing windows designed, manufactured, marketed, advertised, warranted, and sold by MIWD. Second Am. Compl. ¶¶ 2, 8, 9. According to plaintiffs, the windows are defective in that the loss of seal at the bead along the bottom of the glass allows water to enter the windows and leak into the homes, causing mineral deposits, mold, and damage to "other property." Id. ¶¶ 3-4, 19, 28. DeBlaker is the third owner of his home. Id. ¶ 8. Because the terms of MIWD's express warranty only provide coverage to first and second homeowners, DeBlaker asserts claims in tort for negligence and unfair trade practices and requests declaratory relief. Id. The Thornes are the first owners of their home. Id. ¶ 9. They filed warranty claims with MIWD, but MIWD allegedly failed to repair and replace their windows. Id. ¶¶ 9, 49. As a result, the Thornes assert claims for breach of express warranty and declaratory relief.

## II.  STANDARDS

### A.  Applicable Law

This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law. Johnson v. Hugo's Skateway, 974 F.2d 1408, 1416 (4th Cir. 1992). For diversity cases that are transferred in a MDL, "the law of the transferor district follows the case to the transferee district." Manual for Complex Litigation (Fourth) § 20.132 (2004). Therefore, this court must apply North Carolina substantive law and federal procedural law.

### B.  Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in its favor. See E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court's task is to determine whether the complaint states a "plausible claim for relief." Id. at 679. Although Rule 8(a)(2) requires only a "short and plain statement of the claim," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "Facts pled that are 'merely

consistent with' liability are not sufficient." A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

### III.  DISCUSSION

MIWD moves for reconsideration of Judge Mullen's denial of its motion to dismiss DeBlaker's negligence and unfair trade practices claims as barred by the economic loss doctrine and for failure to plead reliance in the unfair trade practices claim. MIWD additionally moves to dismiss plaintiffs' declaratory relief cause of action.[1]

**A.  Motion for Reconsideration**

When presented with a motion for reconsideration, courts must initially determine the appropriate standard to apply. Under Federal Rule of Civil Procedure 59(e), a "motion to alter or amend judgment must be filed no later than 28 days after the entry of the judgment." Judge Mullen's order was filed on March 24, 2011, and MIWD did not move for reconsideration until May 23, 2011. Under Rule 60(b), a party may move for relief from a final judgment or order, but Judge Mullen's order was interlocutory; it did not end the action as to any of plaintiffs' claims. Therefore, the applicable standard is found in Rule 54(b): "[A]ny order . . . that adjudicates fewer than all the claims . . . may be revised at any time . . . ."  Fed. R. Civ. P. 54(b).

> While motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment under Rule 60(b), the Court should grant a Rule 54 motion only under narrow circumstances.  The Court should reconsider a prior interlocutory order under Rule 54 only when "(1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." Akeva L.L.C. v. Adidas Am., Inc., 385 F. Supp. 2d 559, 566 (M.D.N.C. 2005).

---

[1] MIWD also originally moved to dismiss the Thornes' claim for breach of express warranty, but during oral argument, MIWD "agreed to withdraw its motion to dismiss as to the Thornes." Hr'g Tr. 3:21-23, Sept. 20, 2012, ECF No. 72.

4

Bailey v. Polk Cty., N.C., No. 10-264, 2012 WL 122565, at *2 (W.D.N.C. Jan. 17, 2012) (internal citation omitted).

Here, MIWD argues that Judge Mullen made "clear error" in that he "misapprehended MI's arguments relating to the economic loss rule and misconstrued the nature of DeBlaker's [unfair trade practices] claim." Def.'s Mem. Supp. Mot. Recons. 3. MIWD further makes the "sky is falling" contention that if Judge Mullen's order is not reconsidered, "the law of warranties w[ill] be eviscerated." Id. at 2.

### 1. DeBlaker's Claims for Negligence and Unfair Trade Practices – Application of the Economic Loss Doctrine

MIWD first moves for reconsideration of Judge Mullen's denial of the motion to dismiss DeBlaker's claims for negligence and unfair trade practices as barred by the economic loss doctrine.

North Carolina's economic loss doctrine "prohibits the purchaser of a defective product from bringing a negligence action against the manufacturer or seller of that product to recover purely economic losses sustained as a result of that product's failure to perform as expected." Wilson v. Dryvit Sys., Inc., 206 F. Supp. 2d 749, 753 (E.D.N.C. 2002). The doctrine does not bar recovery in tort for damage caused by the defective product to property other than the product itself or for personal injury. Ellis v. Louisiana-Pacific Corp., --- F.3d ----, 2012 WL 5378085, at *3 (4th Cir. Nov. 2, 2012) (citing Ford v. All-Dry of the Carolinas, Inc., No. 10-931, 2011 WL 1483726, at *3 (N.C. Ct. App. Apr. 19, 2011)).

Relief in tort may not be denied solely because a plaintiff is a subsequent purchaser that lacks contractual privity with a defendant. See Oates v. JAG, Inc., 333 S.E.2d 222, 223-25 (N.C. 1985) ("[A]n owner of a dwelling house who is not the original

purchaser has a cause of action against the builder and general contractor for negligence in the construction of the house, when such negligence results in economic loss or damage to the owner."). The issue in determining whether the economic loss rule applies is whether the plaintiff has an available contractual remedy. In <u>Lord v. Customized Consulting Specialty, Inc.</u>, the plaintiff homeowners did not have a contract with a defendant that allegedly supplied defective trusses used in the building of their home. 643 S.E.2d 28, 29 (N.C. Ct. App. 2007). Because no contract existed between the plaintiffs and the truss manufacturer, the North Carolina Court of Appeals held that "the economic loss rule does not apply and therefore does not operate to bar the [plaintiffs'] negligence claims." <u>Id.</u> at 33; <u>see also id.</u> at 29 ("[T]he economic loss rule does not operate to bar a negligence claim in the absence of a contract between the parties."); <u>Hospira Inc. v. Alphagary Corp.</u>, 671 S.E.2d 7, 14 (N.C. Ct. App. 2009) ("[W]here no contractual privity exists between the parties, the rationale for barring recovery under the economic loss rule is not advanced by barring a claim for negligence.").

To the contrary, in <u>Moore v. Coachmen Industries, Inc.</u>, the plaintiff RV owners sued the manufacturer and supplier of an allegedly defective part that caused a fire and destroyed their vehicle. 499 S.E.2d 772, 780 (N.C. Ct. App. 1998). While the plaintiffs had no contract with this defendant, their vehicle was covered by a limited warranty. Because the plaintiffs had an available remedy in contract, the economic loss doctrine barred recovery in tort. <u>Id.</u>; <u>see</u> <u>Hospira</u>, 671 S.E.2d at 14 (referring to <u>Moore</u> as "holding that owners of a recreational vehicle were barred from recovering for pure economic losses from all defendants under the economic loss rule, including the component part manufacturer, who was not in privity with plaintiff, but where the Court

6

concluded the remote supplier was covered under the subsidiary manufacturer's limited warranty").

The Eastern District of North Carolina recently summarized the legal landscape as follows:

> In analyzing North Carolina appellate decisions applying the economic loss doctrine and federal court [decisions] applying North Carolina's economic loss doctrine, courts focus on the availability of a contractual remedy, including a remedy for breach of warranty. . . .  Notably, in Hospira and Lord, if the court did not allow the negligence claim to proceed on a tort theory, plaintiffs would have been without a contract or warranty remedy.  Further, in Moore, the North Carolina Court of Appeals applied the economic loss rule despite the lack of a contract between the RV manufacturer and plaintiff because plaintiff had a remedy under the manufacturer's express warranty. . . .  [The cases] indicate[] that North Carolina applies the economic loss rule even absent a contract between plaintiff and defendant *so long as plaintiff has a contract or warranty remedy against defendant*.

Kelly v. Georgia-Pacific LLC, 671 F. Supp. 2d 785, 793-96 (E.D.N.C. 2009) (emphasis added); see also Ellis v. Louisiana-Pacific Corp., No. 11-191, 2011 WL 5402878, at *1 (W.D.N.C. Nov. 8, 2011), aff'd, 2012 WL 5378085 (reading Kelly as holding "that because plaintiff had an available warranty remedy, and was only seeking damages for economic loss, North Carolina's economic loss rule barred plaintiff's negligence claims").

The above legal standards were accurately and succinctly recited by Judge Mullen in his order.  If any ambiguities existed, they have been resolved by the Fourth Circuit's recent opinion in Ellis v. Louisiana-Pacific Corp., which affirmed another decision by Judge Mullen involving the economic loss doctrine and discussed in detail the current status of North Carolina law.  See 2012 WL 5378085, at *6 ("After parsing the cases mentioned above, [including Oates, Lord, Hospira, and Kelly,] we believe the relevant inquiry under North Carolina case law is whether the plaintiff has a basis for recovery in

7

contract or warranty." (internal quotation marks and alterations omitted)). Judge Mullen recognized this standard when he wrote that North Carolina courts "apply the economic loss rule even in the absence of a contract between the parties so long as the plaintiff has a contract or warranty remedy against the defendant." DeBlaker v. MI Windows & Doors, Inc., No. 10-427, 2011 WL 1135551, at *1 (W.D.N.C. Mar. 24, 2011).

It is undisputed that DeBlaker is not in privity of contract with MIWD, and DeBlaker alleges that he never had recourse under MIWD's express warranty since he is the third owner of his home. See Second Am. Compl. ¶ 8 ("The terms of MIWD's express warranty provide coverage only to first and second homeowners."); see also Hr'g Tr. 14:5-7, Sept. 20, 2012, ECF No. 72 (statement by counsel for MIWD that express warranty would "never" apply to a third purchaser of a home containing windows manufactured by MIWD). Therefore, accepting the allegations of the second amended complaint as true, this court cannot find that DeBlaker "has a basis for recovery in contract or warranty." Ellis, 2012 WL 5378085, at *6 (internal quotation marks and alterations omitted). Accordingly, the economic loss doctrine does not bar DeBlaker's tort claims, and Judge Mullen made no clear error.[2]

### 2. DeBlaker's Claim for Unfair Trade Practices – Failure to Plead Reliance on a Specific Misrepresentation

MIWD next moves for reconsideration of Judge Mullen's denial of the motion to dismiss DeBlaker's claim for unfair and deceptive trade practices under Section 75-1.1 of the North Carolina General Statutes.

---

[2] The court notes that this case is still in its infancy. At the summary judgment stage, if MIWD so moves, the court will entertain arguments regarding applicability of the economic loss doctrine based on specific facts developed through discovery relating to DeBlaker's purchase of his home in deciding whether he has a basis for recovery in contract or warranty. However, at this stage and under this standard of review, dismissal would not be appropriate.

To state a claim under the North Carolina Unfair and Deceptive Trade Practices Act, Section 75-1.1 of the North Carolina General Statutes, a plaintiff must show: "(1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff." Becker v. Graber Builders, Inc., 561 S.E.2d 905, 910 (N.C. Ct. App. 2002). "Where an unfair or deceptive trade practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show 'actual reliance' on the alleged misrepresentation in order to establish that the alleged misrepresentation 'proximately caused' the injury of which plaintiff complains." Tucker v. Blvd. At Piper Glen LLC, 564 S.E.2d 248, 251 (N.C. Ct. App. 2002).

It is undisputed that DeBlaker does not plead actual reliance on a specific misrepresentation in the second amended complaint. Instead, DeBlaker essentially alleges that MIWD concealed the defective nature of its windows with the intent to deceive purchasers. See Second Am. Compl. ¶ 42. Judge Mullen found that such an allegation states a plausible claim under the Act. MIWD contends that Judge Mullen erred by not holding that actual reliance on a misrepresentation is a required element of a claim for fraudulent concealment.

Courts in North Carolina have "recognized causes of action under N.C.G.S. § 75-1.1 for unfair methods of competition where the plaintiff had no direct transactional relationship with the defendant." J.M. Westall & Co v. Windswept View of Asheville, Inc., 387 S.E.2d 67, 75 (N.C. Ct. App. 1990) ("Accordingly, the proper inquiry is not whether a contractual relationship existed between the parties, but rather the defendants' allegedly deceptive acts *affected* commerce."). Courts in North Carolina have also

9

permitted claims for unfair trade practices based on deception to survive dismissal when the defendant was alleged to have engaged in a business activity that was deceptive, that affected commerce, and that injured the plaintiff as a result. See Allran v. Branch Banking & Trust Corp., No. 10-5482, 2011 WL 2652133, at *6 (N.C. Super. Ct. July 6, 2011) ("Plaintiff does not allege that [defendant] made an affirmative representation of a material fact directly to Plaintiff or to anyone in privity with Plaintiff . . . . Nonetheless, Plaintiff alleges in his complaint, with specificity, both misrepresentation and deception by Defendant."). Given this case law, it does not appear that Judge Mullen made any "clear error" in deciding that DeBlaker's allegations "state a plausible claim for unfair and deceptive trade practices." DeBlaker, 2011 WL 1135551, at *2. Therefore, reconsideration is not warranted.[3]

### 3. Request for Interlocutory Appeal

MIWD alternatively requests that the court certify an interlocutory appeal of Judge Mullen's order to the Fourth Circuit. Such an appeal would be time consuming

---

[3] This ruling does not preclude MIWD from arguing at a later stage that DeBlaker cannot satisfy the elements of an unfair trade practices claim, especially given the Fourth Circuit's recent ruling in Ellis v. Louisiana Pacific Corp., which the parties have brought to the court's attention. That case has no bearing on the instant motion for reconsideration of Judge Mullen's decision denying MIWD's motion to dismiss DeBlaker's claim for unfair trade practices. In Ellis, the plaintiff had an available claim for breach of express warranty, and his claim for unfair trade practices was dismissed since it simply re-couched the breach of warranty claim. Here, DeBlaker has no claim for breach of express warranty. However, the Ellis decision may have some bearing on the viability of DeBlaker's other allegations for unfair trade practices at the summary judgment stage. Cf. Ellis, 2012 WL 5378085, at *8 ("Failing to insure that all consumers who would eventually own a structure containing Trimboard received a copy of the warranty is neither unfair nor deceptive."), with Second Am. Compl. ¶ 43 ("MIWD also engaged in unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1 when it failed to provide an express warranty to all owners of homes with its defective Windows.").

and futile, and there is no "substantial ground for difference of opinion" as required by the certification statute. 28 U.S.C. § 1292(b). Therefore, the court denies this request.[4]

### B. Motion to Dismiss Claim for Declaratory Relief

MIWD moves to dismiss plaintiffs' claim for declaratory relief. Courts have "long recognized the discretion afforded to district courts in determining whether to render declaratory relief." Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 421-22 (4th Cir. 1998). The declaratory relief sought here is based on the substantive claims in the second amended complaint. Declaratory relief would be inappropriate at this stage, as the merits of plaintiffs' substantive claims have not been adjudicated. Because the court allows plaintiffs' substantive claims to proceed without amendment, it would be inappropriate to dismiss plaintiffs' claim for declaratory relief at this stage.

### IV. CONCLUSION

Based on the foregoing, the court **DENIES** defendant's motion to dismiss and for reconsideration.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 9, 2012**
**Charleston, South Carolina**

---

[4] The North Carolina Supreme Court would be in the best position to clarify questions of state law, but as the Fourth Circuit recently acknowledged, "unfortunately, the North Carolina Supreme Court has no mechanism for receiving certified questions." Ellis, 2012 WL 5378085, at *3 n.4.